UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JANE E. HARRAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:07-CV-144 |
| | ) | |
| ALLTEL COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Jane E. Harrah ("plaintiff"),[1] brought suit against the defendant, Alltel Communications, Inc. ("Alltel" or "defendant"), for discrimination under the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 623(a) (1994), the Tennessee Human Rights Act ("THRA"), *see* T.C.A. § 4-21-101, *et seq.*, the Americans With Disabilities Act ("ADA"), *see* 42 U.S.C. § 12101, *et seq.*, and the Family Medical Leave Act ("FMLA"), *see* 29 U.S.C. 2615. The plaintiff also sued for breach of contract. Alltel has filed a Motion for Summary Judgment, [Doc. 16], and the plaintiff has responded. The matter is ripe for decision.

---

[1]The defendant filed a Statement Of Death, [Doc. 42], on March 17, 2009, and on June 8, 2009, Charles Harrah, the plaintiff's surviving spouse, filed a "Motion for Substitution of Party," [Doc. 44]. On June 25, 2009, this Court granted that motion, and Charles Harrah was substituted for the plaintiff.

I.   **FACTUAL BACKGROUND**

In viewing the facts in the light most favorable to the plaintiff, the following sets forth the background of this dispute:

The plaintiff worked for Alltel or its predecessors from July 1995 until August 14, 2006, the date of her termination. She first sold cellular telephones, accessories, and wireless long distance service at various locations in the Tri-Cities area. In 2005, the plaintiff held the classification of Universal Service Representative ("USR"), which was less sales-oriented than a sales representative. The plaintiff received satisfactory or above work performance evaluations. In October 2005, she and other USRs were reclassified as wireless consultants ("WC") after Alltel restructured and merged USR and sales representative positions. In so doing, Alltel created a new evaluation system, known as the AOP Assessment Tool, to evaluate the WCs.

The details of this system were explained in a document titled Retail AOP Performance Management, and it set forth the evaluation process, including the calculation of the Composite Quota Attainment ("CQA") score, which was used to evaluate a WC's performance. The CQA score was based on five weighted factors, which included sales of pre-pay and post-pay wireless units, sales of accessories, contract renewals, sales of features, etc., and the WCs were required to maintain a

2

score of 85. The document also provided that a WC who achieved a sub-85 score would be placed on a Performance Improvement Plan ("PIP") by the store manager. The document further provided that any WC placed on PIP for two consecutive months or three times within a rolling twelve-month period would be terminated and that the store manager would consult the Human Resource Department prior to termination. In addition, the document stated that

> [c]onsideration will be given for approved absences of any duration (i.e. vacation, leaves of absence, training, etc.) and all FMLA-protected absences. If other extenuating circumstances exist and the Store Manager would like to request that an exception be made for a WC, then the Store Manager must make a written appeal to the Vice President of Retail Services, which must be approved by the Area President and local Human Resources.

Plaintiff's supervisor at the time of the reclassification, Jimmy Doyle, explained the criteria to the plaintiff, and in November 2005, the plaintiff's score was below 85. As a result, she was placed on PIP by Brian Stone ("Stone"), the store manager. Her score in February 2006 was below 85, and she was again placed on PIP.

In June 2006, the plaintiff learned that she would need back surgery. On June 9, 2006, she asked Stone to be approved for medical leave starting on June 15, 2006, and he approved. Based upon plaintiff's understanding of Alltel's evaluation process, which provided "consideration" for approved absences, she "sent sales to another employee in [her] office." On June 14, 2006, plaintiff's last day of work

3

before approved leave, she received her Daily Focus Card, which WCs received at the beginning of each workday that contained month-to-date sales data that he or she had achieved.

In early July 2006, Stone entered 104 "exception hours" into the AOP system, the exact amount of time for the plaintiff's approved medical leave. Thus, her CQA score was prorated for the amount of time she actually worked. At that point, Stone learned that the plaintiff had achieved a below 85 score for the month of June 2006. He communicated this to the Human Resources Department. Sometime after the score was generated, but prior to August 14, 2006, the decision was made to terminate the plaintiff's employment upon her return to work, which was scheduled for August 14, 2006, after she received two extensions of medical leave at her request based upon her doctor's recommendation.

On August 14, 2006, the plaintiff returned to work, and Stone immediately asked her to come into his office. He then informed her of Alltel's decision to terminate her employment and told her it was because she received three below 85 CQA scores within a rolling twelve-month period.

II. **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of

4

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to

summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### III. **DISCUSSION**

The defendant moves for summary judgment as to all claims. This Court will discuss each in turn.

#### A. **ADA AND BREACH OF CONTRACT CLAIMS**

The defendant argues that it is entitled to summary judgment on the ADA claim because (1) the plaintiff does not have a disability within the meaning of the Act, and (2) the plaintiff failed to file this particular charge of discrimination with

6

the Equal Employment Opportunity Commission ("EEOC").[2] *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (stating that "[a]n employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies"). Further, the defendant contends it is entitled to summary judgment on the breach of contract claim because the plaintiff conceded in her deposition that she had no employment contract and that she was an at-will employee. *See Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 396 (Tenn. Ct. App. 1981) (stating "a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause").

The plaintiff responded to the defendant's Motion for Summary Judgment, but she did not respond to Alltel's contentions as to her ADA and breach of contract claims. The plaintiff's failure to respond as to these claims, in and of itself, may serve as grounds for granting defendant's motion. E.D.TN. LR 7.2. In any event, the uncontroverted evidence in the case establishes that the plaintiff failed to exhaust her administrative remedies under the ADA and had no contract of employment with the defendant. The Court, therefore, FINDS that the defendant's Motion for Summary Judgment as to these claims is well taken, and accordingly, it

---

[2]According to the record, the plaintiff only checked "Age" on her EEOC charge.

is **ORDERED** that defendant's motion, [Doc. 16], regarding the Americans With Disabilities Act and the breach of contract claims, be **GRANTED**. It is further **ORDERED** that those claims are hereby **DISMISSED WITH PREJUDICE**.

B. **AGE DISCRIMINATION IN EMPLOYMENT ACT AND TENNESSEE HUMAN RIGHTS ACT**

The defendant argues that it neither violated the ADEA nor the THRA in terminating the plaintiff but that the plaintiff was terminated according to the defendant's objective, non-discriminatory performance standards.[3] More specifically, the plaintiff amassed CQA scores for three months between November 2005 and June 2006 that were below the required 85; thus, she was terminated. To the contrary, the plaintiff argues that she was terminated because of her age.

1. *PRIMA FACIE* **CASE**

The plaintiff bears the burden of establishing a *prima facie* case of age discrimination under the ADEA. She can meet this burden by proving that (1) she was a member of a protected class; (2) she suffered an adverse employment action;

---

[3]Section 4-21-101(a)(1) states that the "purpose and intent of the general assembly by [the enactment of the THRA is] to [p]rovide for execution within Tennessee of the policies embodied in the Federal Civil Rights Acts of 1964, 1968 and 1972, . . . and the Age Discrimination in Employment Act of 1967, as amended." T.C.A. § 4-21-101(a)(1). Cases deciding THRA issues "look to cases which have construed the federal 'Age Discrimination in Employment Act.'" *Bruch v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984). Thus, this Court will analyze the two claims as one.

8

(3) she was qualified for the position; and (4) she was replaced by someone outside of her protected class or that other similarly situated employees outside of her protected class were treated better. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)).

In order to meet her burden regarding the fourth element, the plaintiff must show that she was "similarly situated" to her comparator "in all relevant aspects," and that their employment circumstances were "nearly identical." *See Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Mitchell*, 964 F.2d at 583. Factors that this Court considers in making this determination are set forth in *Mitchell v. Toledo Hospital* and include whether the plaintiff and comparator: (1) dealt with the same supervisor; (2) had been subject to the same standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. 964 F.2d at 583.

The defendant states that it "will not bother to argue that Plaintiff failed to satisfy her burden of stating a *prima facie* case, although it is certainly questionable to say that someone who misses her quota three out of nine months is 'qualified.'" However, later in the defendant's motion, the defendant stated that this is a disparate

9

treatment case and addressed whether other similarly situated employees outside of the plaintiff's protected class were treated better. After such argument, the defendant asked that the plaintiff's "allegations of age discrimination . . . be dismissed, as a matter of law." Thus, this Court will address the last element.

At the time of termination, the plaintiff was a WC. According to the record, she and the other WCs, who worked at the same location and who were outside of the protected class, reported to the same supervisor, Stone, and were subject to the same CQA standards. The specific evidence that the plaintiff offers as to disparate treatment was contained in her affidavit, and she claimed that she "was passed over or turned down for five promotions or advancements . . . while younger workers were promoted," that Stone invited younger employees to lunch and demonstrated new products to them, and that the younger employees were allowed to attend promotional events outside of the office, which provided an opportunity to boost their sales. Nonetheless, the plaintiff has not offered any evidence that her comparators had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell*, 964 F.2d at 583.

More specifically, the plaintiff could not produce evidence of anyone younger than her who received three PIPs in a twelve-month period who was not

terminated. Although she claims that she should have been warned of her below-quota performance prior to taking leave and was not warned because of her age, she could not provide any examples of people younger than her who were warned of below-quota performance prior to taking FMLA leave. Moreover, the defendant produced evidence of four former WCs, all of whom were younger than the plaintiff, who were terminated because their CQA scores were below 85.

However, this Court will not hold that the plaintiff has failed to make a *prima facie* case of age discrimination because the plaintiff claims in her affidavit, and the defendant has not disputed, that she was replaced by someone outside of the protected class. This claim satisfies the alternative prong of the fourth element establishing a *prima facie* case of age discrimination. *See Mitchell*, 964 F.2d at 582-83 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)).

2. **PRETEXT OF REASONS FOR TERMINATION**

Because this Court has found that the plaintiff has established a *prima facie* case for her age discrimination claim, the burden shifts to the defendant to set forth "some legitimate non-discriminatory reason for the employee's discharge." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994); *see also Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1024 (6th Cir. 1993). Alltel has set forth a legitimate non-discriminatory reason for its termination of the plaintiff, that is, that the

11

plaintiff was discharged for receiving three sub-85 CQA scores within a rolling twelve-month period.

Accordingly, the burden shifts back to the plaintiff to prove that the legitimate reason proffered by the defendant was merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). In order to make out a case for pretext, the plaintiff must show:

> Either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F. 3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v Chicago Transit Authority*, 10 F. 3d 501, 513 (7th Cir. 1993)).

At issue here is only whether the proffered reason actually motivated the plaintiff's discharge since the proffered reason had a basis in fact and was sufficient to motivate the discharge based on Alltel's written policy, which was also applied to employees outside the protected class. The plaintiff offers circumstantial evidence via her affidavit that she "was passed over or turned down for five promotions or advancements . . . while younger workers were promoted," that Stone invited younger employees to lunch and demonstrated new products to them, and that the younger employees were allowed to attend promotional events outside of the office, which provided an opportunity to boost their sales. She does not, however, give specific

12

dates, the names of the employees, or their actual ages; she just states they were "younger." Thus, it is unclear whether these employees were outside of the protected class. In addition, the plaintiff claims that while Stone was her supervisor, he hired three individuals in their twenties. She then compares employees hired to the "overall labor force" to show that a large number of employees hired were under the age of forty. The plaintiff asserts that when she started working at the Mountcastle Drive retail store she was one of three employees over the age of forty. At the time of termination, she was the only person over forty at that location. The plaintiff also claims that the timing of her termination regarding her taking leave is suspect.[4]

Additionally, the plaintiff offers circumstantial evidence from the affidavit of Bruce Hatch ("Hatch"), the plaintiff's former supervisor, who left Alltel's employ on February 15, 2001. Hatch states in his affidavit that while he worked for Alltel, "the atmosphere of the company was definitely a young and 'hip' industry. The corporate culture within Alltel emphasized a youth-oriented work force." He further states: "There was a pervasive stereotype held by company management that 'old' was equated with obsolete or was inconsistent with the wireless industry. Concerns of age were considered in managing the work force." In addition, he states

---

[4]This Court fails to see the relevance of this in regard to the age discrimination claim and will address the timing issue in regard to her FMLA claim.

that he recommended a male approximately 50 years of age for employment and "was told by a general manager at Alltel that he had concerns as to whether someone 'that age' could keep up."

First, the defendant argues that Hatch's affidavit should be wholly disregarded because his statements are irrelevant. This Court agrees with the defendant. Mr. Hatch left Alltel in 2001, approximately five and one-half years before the plaintiff was terminated. His observations as to the corporate atmosphere and his opinions as to the company's emphasis on youth is too attenuated in time to be relevant to plaintiff's termination. In addition, the unidentified general manager's comment is also irrelevant and perhaps hearsay. *See Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (stating that statements by non-decision makers are irrelevant and do not suffice to satisfy the plaintiff's burden of demonstrating animus); *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983) (stating that statements made by non-decision makers were hearsay because there was no basis showing they were made within the scope of the employees' employment).

Second, based on statements made by the plaintiff in her deposition, she does not claim that her age was the reason she was passed over for the five promotions for which she applied, and in her affidavit, she does not state the ages of the

"younger" workers who were selected. Thus, as noted above, these individuals could be younger but inside the protected class. The same holds true for her claims that Stone invited younger employees to lunch, demonstrated products to them, and allowed them to go on promotional events. Similarly, there is not sufficient evidence in the record regarding the claim that Stone showed a pattern of discrimination by hiring three people outside the protected class to establish animus. She compared their employment to the "overall labor force" and did not establish how many applicants inside the protected class, if any, applied for these positions. The plaintiff also failed to show whether the other employees, who were over forty and who worked with her when she moved to the Mountcastle retail store, were discriminated against in any way or terminated because of their age. On the contrary, according to evidence supplied by the defendant, one retired from the company at age 65, and the other continued to work for the company.

The plaintiff has thus failed to set forth material proof that the defendant's legitimate non-discriminatory reason is pretextual. Alltell based the discharge on the three sub-85 CQA scores, scores which are generated by a computer.[5]

---

[5]This Court does not find persuasive the plaintiff's argument that she should have received notice that her June score would be prorated prior to her medical leave. The calculation of the scores was set forth in writing and the method of calculation explained to the plaintiff once it was implemented. She was also not held accountable for the time she did not work; thus, "consideration" was given to her leave time. Additionally, she apparently received a daily score sheet that notified her of her sales, although it did not notify her of her current CQA score, prior

15

The plaintiff offers no evidence of any person outside of the protected class who was not fired for receiving two consecutive sub-85 CQA scores or three sub-85 scores within a rolling twelve-month period. The general allegations, inferences, and speculation of the plaintiff is not sufficient evidence that the defendant intentionally discriminated against the plaintiff. Thus, this Court cannot conclude that the proffered reasons did not *actually* motivate the plaintiff's discharge. Absent some other direct or circumstantial evidence suggesting that the defendant's non-discriminatory reason is pretextual, the plaintiff has failed to establish an issue of material fact sufficient to avoid summary judgment. *Hopson v. DaimlerChrysler Corp.*, 306 F. 3d 427, 438 (6th Cir. 2002). Accordingly, the defendant's Motion for Summary Judgment regarding the ADEA and THRA claims is **GRANTED**.

### C. FAMILY MEDICAL LEAVE ACT

Plaintiff merely alleges in her Complaint that the defendant "violated [her] rights under the FMLA," and the Complaint further states, "The actions of Defendant were taken in order to interfere with or retaliate against Plaintiff in violation of 29 U.S.C. Section 2615 for her taking of family or medical leave." In her Response to the defendant's Motion for Summary Judgment, she argues retaliatory discharge and contends that Alltel violated the FMLA by failing to provide her with

---

to her taking leave.

written notice regarding the specific expectations and obligations and the failure to meet the obligations surrounding the taking of FMLA leave.

It is undisputed that the plaintiff was entitled to take FMLA leave for back surgery. She applied for and was approved for this leave.[6] The plaintiff's leave was actually extended per her requests. The plaintiff argues that she "will show that, more likely than not, . . . Alltel took her continued medical need for leave into consideration in its decision to terminate her." The plaintiff has offered no evidence that the defendant retaliated against her for taking FMLA leave. She merely contends that "a strong inference . . . can be drawn by the trier of fact that the decision to terminate [her] was a result of her having taken FMLA leave." She supports her argument by claiming a violation based upon the timing of her termination, the lack of notice of approval, and the lack of notice regarding expectations and obligations, including no warning that she would be expected to meet certain pro-rated CQA scores for the time she worked in June prior to her FMLA leave.

Accordingly, in order to establish a *prima facie* case of retaliatory discharge, the *McDonnell-Douglas* burden-shifting framework for employment discrimination in employment cases based on indirect evidence must be utilized. *See*

---

[6]Plaintiff argues that the written notice approving her leave was not sent to her until August 16, 2006, which was after her termination.

*Daugherty v. Sajar Plactics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *see also McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must typically make a *prima facie* showing that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Daugherty*, 544 F.3d at 707. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

The first two elements are clearly satisfied, and this Court FINDS that the third element is also satisfied. The plaintiff was terminated the very day she returned from work after her FMLA leave. The Sixth Circuit has held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. *See Skrjanc*, 272 F.3d at 314; *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding that plaintiff had established a *prima facie* case where she was terminated the very day she was scheduled to return from work after FMLA leave).

If the plaintiff satisfies her prima facie showing, then the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d

18

357, 364 (6th Cir. 2007). If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination. *Id*. "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Thus, the same analysis this Court applied in the ADEA and THRA context applies here with the addition of the plaintiff's circumstantial evidence regarding the timing of her termination in relation to her approved medical leave. In that regard, Alltel employees were not aware of the plaintiff's third sub-85 CQA score until early July after her medical leave commenced. The record is unclear as to the exact date the decision was made to terminate the plaintiff, but this Court discerns that the decision was made prior to her second extension of medical leave.

As stated above, the plaintiff has failed to carry her burden and show that the defendant's proffered reason is a pretext for unlawful discrimination, and the timing does not change this conclusion. The decision to terminate was made on the basis that the plaintiff failed to meet acceptable quotas. Even after this decision was made, the plaintiff's leave was extended, and she was not informed of the termination until her return. The FMLA does not protect an employee on leave from an adverse

19

employment decision that would have otherwise occurred had she not taken leave. *See* 29 C.F.R. 825.312(d); *see also Taylor v. Union Institute*, 30 Fed. Appx. 443, 453 (6th Cir. 2002). Therefore, the defendant's Motion for Summary Judgment on this claim is **GRANTED**.

IV. **CONCLUSION**

It is hereby **ORDERED** that Alltel's Motion for Summary Judgment, [Doc. 16], is **GRANTED**, and the plaintiff's Complaint is hereby **DISMISSED**.

A judgment consistent with this opinion shall enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
